**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

```
                                      )
HILTON M. WILSON, et al.,             )
                                      )
          Plaintiffs,                 )
                                      )
v.                                    )        Civil Action No.  3:99CV556
                                      )
                                      )
WILLIAM PERRY, et al.,                )
                                      )
          Defendants.                 )
                                      )
```

**MEMORANDUM OPINION**

This matter is before the Court on the Motion and Memorandum in Support by Independent Fiduciary on Behalf of District 6 Health and Pension Plans to Void Claims by Union and Permit and Authorize Plans to Enter Into Administration Agreements by Larry Magarik ("IF Mot. to Void") (docket entry no. 88), and the Application by District 6, IUISTHE to Recover Unpaid Retroactive Rent and Other Expenses from the District 6 Health Plan and the District 6 Pension Plan ("Union Application") (docket entry no. 94).  For the reasons set forth herein, the Motion to Void by the Independent Fiduciary is GRANTED and the Union Application is DENIED.

**BACKGROUND AND PROCEDURAL HISTORY[1]**

The instant case was initially filed in this Court on August 5, 1999.  Wilson v. Perry, No. 3:99cv556 (E.D. Va. Aug. 5, 1999) (docket entry no. 1).  The Plaintiffs, who were employed by

_____

[1] The Court deems a detailed summary of the factual and procedural background of the situation to be useful because of its long, convoluted history and in anticipation of future actions that will attempt to bring final closure.

Econo Clean Janitorial Services, Inc. ("Econo Clean"), are cafeteria workers at a Richmond, Virginia military facility (Fort Lee), members of the District 6 International Union of Industrial Service Transport and Health Employees ("the Union"), and participants in the Union Pension and Health plans ("the Plans").   The Defendants, collectively referred to as the "Wilson Defendants," are William Perry, Jerome Vuoso, Peter Schorr, Montague Wolfson, Econo Clean, and the District 6 Realty Corporation.[2]   William Perry was, at the time litigation commenced and remains, President of the Union.  He was also the Administrator and a trustee of both Plans as well as the President and Director of the District 6 Realty Corporation until his removal from both positions as a result of the litigation.  Jerome Vuoso and Peter Schorr were trustees of the Pension Plan at the time of the 1999 filing, while Mr. Vuoso and Montague Wolfson were trustees of the Health Plan.  The District 6 Realty Corporation ("the Realty Corporation"), which was partly owned by the Union (twenty percent) and the Health Plan (eighty percent), was a company that was formed to purchase the building[3] in which the offices of the Union and the Plans were located.[4]

In the original Complaint, the Plaintiffs alleged that the Wilson Defendants had violated their fiduciary duties in managing the Pension Plan assets by plundering the Plan under the guise of charging excessive administrative costs and committing certain acts, or failing to act, in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*

---

[2] The Union was not a named defendant in the initial suit.

[3] The building is located at 18 East 31st Street, New York, New York 10016.

[4] As discussed herein, the building was ultimately sold and the Realty Corporation rendered defunct.

Specifically, the Plaintiffs alleged that the Wilson Defendants[5] (except for Econo Clean) breached their fiduciary duties under 29 U.S.C. §§ 1104-1108, and that Econo Clean violated 29 U.S.C. § 1145 because it failed to make required payments pursuant to a governing collective bargaining agreement. (docket entry No. 1 at 13-18). The Plaintiffs reached a settlement with Econo Clean shortly after litigation commenced and the company was thereupon dismissed as a defendant. The Plaintiff and the remaining Wilson Defendants then resolved all remaining claims in a May 29, 2001, Consent Order ("2001 Consent Order") pursuant to the following salient terms: (1) the Health Plan was to reimburse the Pension Plan $214,922, plus interest; (2) the trustee Defendants (Perry, Vuoso, Wolfson, and Schorr) were to pay $200 to each named Plaintiff; (3) the trustee Defendants were enjoined from participating or acting as a fiduciary or service provider for either of the Plans; (4) the building and the Realty Corporation were to be placed in a constructive trust for the benefit of the Plans; (5) the building was to be sold at fair market value to an unrelated buyer; (6) an independent fiduciary was to be appointed to oversee both Plans and to implement the terms of the Consent Order, including terminating the Pension Plan; and (7) the Pension Plan was to purchase fiduciary liability insurance for the Independent Fiduciary. Thereafter, Ms. Sandra Torres, the Union's assistant secretary, became the Administrator of the Plans and the court appointed Michael Wolf, Esquire as the Independent Fiduciary of the Pension Plan. The case has remained open since entry of the 2001 Consent Order to ensure compliance with its terms.

In a separate action arising under ERISA, 29 U.S.C. § 1132(a)(2) and (5),[6] the United States

---

[5] Perry, Vuoso, Wolfson , and Schorr are all considered fiduciaries under ERISA pursuant to 29 U.S.C. § 1002(21)(A).

[6] Section 1132(a)(2) allows for a civil action "by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title," while Section1132(a)(5) enables the Secretary of

3

Department of Labor ("DOL") filed suit on March 19, 2002, in the Southern District of New York against Perry, Vuoso, Ludovic Marcovici, Francis Winn, the Union, and the Plans alleging various violations of ERISA that were related to the Defendants' involvement with the same Plans that were the subject of the lawsuit filed in this Court. Chao v. Perry, Civil No. 02:cv2205 (S.D.N.Y. March 19, 2002). William Perry had been the Administrator and a trustee of the Plans in Wilson v. Perry but, as of the date of the 2001 Consent Order that concluded the active part of that litigation, he was prohibited from any further involvement with the Plans. Nevertheless, he was joined as a defendant in Chao because of his involvement with the Plans prior to the 2001 Consent Order. Jerome Vuoso was a trustee of both of the Plans as well, but, pursuant to the 2001 Consent Order, he was also removed from the position and prohibited from having any further involvement with either of the Plans. As with Perry, Vuoso was a defendant in Chao because of his prior involvement as a fiduciary of the Plans. At the time Chao was filed, Ludovic Marcovici was a trustee of the Health Plan, while Francis Winn was a trustee of both Plans. Winn was also the Secretary/Treasurer of the Union. According to the allegations in Chao, Perry, Vuoso, Marcovici, and Winn were considered fiduciaries pursuant to 29 U.S.C. § 1002(21)(A);[7] Perry and Winn were also considered parties-in-

---

the Department of Labor to file suit to "enjoin any act or practice which violates any provision of [ERISA]," as well as to "obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of [ERISA]."

[7] Section 1002(21)(A) provides that "a person is a fiduciary with respect to a plan," and, therefore, subject to ERISA fiduciary duties, "to the extent" that he or she (1) exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (2) renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (3) has any discretionary authority or discretionary responsibility in the administration of such plan.

interest pursuant to 29 U.S.C. § 1002(14)(H);[8] the Union itself was considered a party-in-interest to both Plans pursuant to 29 U.S.C. § 1002(14)(D); and the Health Plan was considered a party-in-interest to the Pension Plan pursuant to 29 U.S.C. §§ 1002(9) and (14)(D) because the Pension Plan reimbursed the Health Plan for administrative expenses.

In Chao, the DOL alleged that the Defendants breached their fiduciary duties under 29 U.S.C. § 1109 for the mishandling of assets of the Plans.  Specifically, the DOL asserted that Perry breached his fiduciary duties under 29 U.S.C. § 1104(a)(1)(A)-(D) by: (a) failing to diversify the Plans' assets, thereby causing the Plans to make payments to the Union for reimbursement of administrative expenses that were not incurred by the Plans; (b) failing to comply with the governing documents of the Plans; and (c) breaching his duties under 29 U.S.C. § 1106(b)(1) and (2) by engaging in prohibited transactions with parties-in-interest by causing the Plans to pay unauthorized administrative expenses to the Union, by causing the Union to fail to pay the Health Plan rent for the Union's occupancy of the building, and for issuing checks from the Plans' accounts without proper authorization.  (Chao Compl. ¶¶ 23-31.)  It was also asserted in Chao that Vuoso, Marcovici, and Winn breached their fiduciary duties with respect to the Health Plan under 29 U.S.C. § 1104(a)(1)(A), (B), and (D) by: (a) failing to monitor the actions of Perry's administration of the Health Plan; (b) failing to comply with the requirements of the Health Plan's governing documents; and (c) by failing to diversify and control the Plan's assets.  (Id. ¶¶ 34-36.)  The DOL further claimed that Vuoso and Winn breached their fiduciary duties with respect to the Pension Plan under 29 U.S.C. § 1104(a)(1)(A) and (B) in not acting in the best interests of the Plan participants and

---

[8] According to this section, Perry and Winn are considered parties-in-interest because they are officers of the Union, which itself is considered a party-in-interest pursuant to § 1002(14)(D) because it is an employee organization whose members are covered by the Plans.

beneficiaries by: (a) failing to administer and exercise control over the Pension Plan assets; (b) failing to monitor the activities of Perry's administration of the Pension Plan; (c) and breaching their duties under 29 U.S.C. § 1105(a)(2) by failing to monitor Perry in his conduct of prohibited transactions with parties-in-interest. (Id. ¶¶ 37-38, 40). Finally, the DOL claimed that the Union, as a party-in-interest, engaged in prohibited transactions in violation of 29 U.S.C. §§ 1106(a)(1)(B)-(D) by charging and receiving unauthorized payments for administrative expenses from the Plans and by failing to pay rent to the Health Plan for its occupancy of the building. (Id. ¶ 33).

The DOL settled the Chao litigation against the Defendants Vuoso, Marcovici, Winn, the District 6 Health Plan, and the District 6 Pension Plan in a September 7, 2004, Consent Judgment ("Chao 2004 Consent Judgment"). The salient terms in that Judgment were that the Defendants Vuoso, Marcovici, and Winn could not be involved in any way with any ERISA-covered employee benefit Plan thereafter; that they were to restore $45,000 to the Health Plan and $5,000 to the Pension Plan; that they would pay $10,000 in civil penalties pursuant to 29 U.S.C. § 1132(1); and that any account balance that they had maintained in the Pension Plan was to be forfeited. The DOL thereafter entered into a settlement agreement with the remaining Defendants, Perry and the Union, in a January 25, 2006, Final Consent Judgment ("Chao Final Consent Judgment"). Pursuant to that agreement, Perry was permanently forbidden, either directly or indirectly, from being involved in any way with the Plans or any ERISA-covered plan; he was to pay $107,000 in restitution to the Plans and a percentage of his federal taxes each year to the Plans for twenty years; the Union agreed to pay $253,000 in restitution to the Plans; and both Perry and the Union were enjoined from sharing employees or commingling employee services thereafter with the Plans.

Before Chao v. Perry was settled in total, the Plaintiffs in Wilson v. Perry filed another

6

lawsuit on June 1, 2005, against the Defendants Torres, Perry, the Union, and the Plans.  Wilson v. Torres, Civil No. 3:05cv378 (E.D. Va. June 1, 2005).  The Plaintiffs alleged that the Defendant Torres, who was the Union's assistant secretary and had become Administrator of the Plans after Perry was enjoined by the 2001 Consent Order from any further involvement with the Plans, breached her fiduciary duties owed to the Plans under 29 U.S.C. §§ 1024(b), 1104(a)(1)(A) and (B), 1105(a)(2), and 1106(a)(1)(D), 1106(b)(1)(2).  (Wilson v. Torres Amended Compl. (docket entry no. 2)).  Specifically, the Plaintiffs asserted that Torres had failed to maintain adequate records in administration of the Plans;  had failed to pursue and/or collect monies owed to the Plans by employers and by the Union;  had failed to properly account for the Plans' assets;  had failed to carry out the administrative duties required by the Plans;  had engaged in prohibited transactions in the transfer of the Plans' assets to the Union and to Perry (who were both parties-in-interest);  had failed to monitor the actions of the trustees and Perry in their handling of the Plans' assets;  had failed to discharge her fiduciary duties by enabling Perry and the trustees to commit fiduciary breaches in their handling of the Plans' assets;  and that she had failed to file required reports and forms for the Pension Plan during the years 2000-2004.  (Torres Amended Compl. ¶¶ 44-48).

The Plaintiffs further alleged that Perry, as President of the Union and former Plan Administrator, breached his fiduciary duties under 29 U.S.C. §§ 1104(a)(1)(A) and (B), 1106(a)(1)(D), and 1106(b)(1) and (2), where even though at the time of the Torres filing he did not have a direct position as Administrator or trustee of either Plan, he remained as a "de facto" fiduciary because of his authority over Torres (the Union's Assistant Secretary) and  Nephty Cruz (a  trustee of the Plans and an Assistant Vice President of the Union).  (Id. ¶ 6.)  The Plaintiffs asserted that because Torres and Cruz were members of the Union and fiduciaries of the Plans, with Perry being

President, such a circumstance allowed Perry to continue to exercise control over the disposition of Plan assets.  Id.  Specifically, the Plaintiffs asserted that Perry diverted monies to the Union from employer contributions that were designated for the Plans; that he, as President of the Union, benefitted personally from the diversion of funds from the Plans to the Union; that he caused the Pension Plan to imprudently handle and invest the Plans' assets; and that he engaged in, or caused the Plans to engage in, prohibited transactions with the Plans' assets with himself or other parties-in-interest.  (Id. ¶¶ 49-53.)

As to the other defendants in the Torres case, the Plaintiffs alleged that Cruz, Guy Perry, Jeffrey Metzger, Michael Balletto, and Joe R. Cruz violated their duties to the Plans as prescribed by §§ 1104(a)(1)(A) and (B), 1106(a)(1)(D), and 1106(b)(1) and (2).  (Id. ¶¶ 54-65, 72-77). Specifically, Nephty Cruz, as trustee of the Plans and an officer of the Union, as well as Guy Perry, son of William Perry and Executive Assistant to the President of the Union (his father), and Jeffrey Metzger, Vice President of the Union, were all accused of transferring assets from the Health Plan to the Union without proper authority or documentation and benefitting from such transfers because they received unauthorized salary and expense reimbursements from the Union.  (Id. ¶¶ 56-57, 60-61, 64-65).  Michael Balletto and Joe R. Cruz, who were appointed trustees of the Plans sometime in 2004, were also alleged to have violated their fiduciary duties because they failed to monitor Torres' administration of the Plans and the actions of the other defendants which enabled the other defendants to breach their fiduciary duties.  (Id. ¶¶ 74, 77).

The Torres case was resolved by a February 1, 2006, Consent Judgment ("Torres Consent Judgment").  The salient terms of that agreement required that no Union officer or employee could sign any checks payable on the Plans accounts or be paid with the Plans' funds; that a new

Independent Fiduciary would be appointed who was charged with overseeing all of the affairs of the Plans; and that the terms of both <u>Chao v Perry</u> Consent Judgments were incorporated into the <u>Torres</u> Consent Judgment.

Pursuant to the <u>Torres</u> Consent Judgment, Larry Magarik, Esquire was appointed as the new Independent Fiduciary of the Plans on February 8, 2006.  Shortly thereafter, the Defendant Union forwarded a letter, dated April 28, 2006, to Mr. Magarik requesting that he approve payment for retroactive rent, expenses, and salary reimbursement for Torres for her work as Administrator of the Plans as well as reimbursement for the services of Claribel Crespo (who was alleged to have been a full-time clerical employee of the Union) for clerical work she performed for the Plans.  (IF Aff. Ex. L).  Mr. Magarik thereupon filed with this Court the Motion to Void the Union's requests which led to a June 26, 2006, Consent Decree ("June Consent Decree"), that, among other things, barred the Union from seeking recovery of any *prospective* rent and expenses; approved the IF's[9] proposal to have the Plans managed by a third-party administrator; ordered the Union to submit forthwith an application seeking recovery for any sums allegedly owed to the Union by the Plans; and provided that the Plans would file a response to the Union's application.  (docket entry no. 89).

The Union filed the present application on August 31, 2006, seeking rent and expenses from the Plans for their alleged use of the Union's premises between March 2003 and July 2006 and reimbursement of eighty percent of Torres' salary as well as ninety percent of Crespo's salary for the time period between January 1, 2006 through June 30, 2006.  (Mem. in Supp. Applic. by Dist. 6,

---

[9]  The shorthand "IF" used in this Opinion as an abbreviation for "Independent Fiduciary" refers only to Mr. Magarik.  Although Michael Wolf was the first Independent Fiduciary appointed pursuant to the 2001 Consent Order, any reference to him will be as "Mr. Wolf" to avoid unnecessary confusion.

IUISTHE to Recover Unpaid Retroactive Rent and Other Expenses from Dist. 6 Health Plan and Dist. 6 Pension Plan ("Union Applic.") at 2-3, ¶¶ 7-9).  The IF filed the Plans' response, denying that the Plans had any obligation to reimburse the Union for any rent or salaries.  (Mem. of Law by IF in Opp'n to Applic. Dist. 6, IUSITHE to Recover Unpaid Retroactive Rent and Other Expenses from Dist. 6 Health Plan and Dist. 6 Pension Plan ("IF Mem.") (docket entry no. 100)).  The relevant issues have been fully briefed and the Court does not believe that any further briefing or oral argument would aid in the decisional process.  The matter is therefore ripe for resolution.

## ANALYSIS

The IF presents three basic, alternative arguments in support of his opposition to the Union's application: (1) that the Consent Decrees and Judgments agreed to by the Union and the Plans bar the Union's salary reimbursement request; (2) that ERISA preempts the Union's request for retroactive rent and expense; and (3) that the Union's request for retroactive rent is barred by Federal Rule of Civil Procedure 13(a) where any claim for such relief was required to be presented by way of compulsory counterclaim during the active phase of the litigation.  (IF Mem. at 9, 13, 16, 21).

### 1.  Salary Reimbursement

In regard to its application for salary reimbursement, the Union asserts that the Plans agreed to reimburse the Union for eighty percent of Torres' salary and ninety percent of Crespo's salary for the subject time period by virtue of approval by the Plan Trustees in a November 13, 2003, Trustee's meeting.  (Union Applic. at 2, ¶7, Ex. B).  However, the Union has neither produced, nor asserted, that there exists a written agreement between it and the Plans concerning such an arrangement. In addition, there is no evidence of any pronouncement outlining Torres' and/or Crespo's compensation, responsibilities, *etc.* as would tend to confirm an arrangement requiring contribution

for their salaries by the Plans.   The only evidence the Union has offered is an unsigned and unvalidated set of trustee meeting minutes in which the issue of salary reimbursement was apparently discussed. But the Union has failed to offer any other meeting minutes, or provide any documentation that reflects a final decision regarding such a reimbursement arrangement.   The Union also implies that since reimbursements were made in previous years, such a circumstance demonstrates that there was such an agreement. (Union Mem. at 14; Union Applic. ¶¶ 19-24).

Regardless of whether the amounts the Plans reimbursed for salaries in 2003, 2004, and 2005 were authorized[10] reimbursements, both the <u>Torres</u> Consent Judgment and the <u>Chao</u> Final Consent Judgment bar the Union's claim for salary reimbursement in 2006, including the time period for which salary reimbursement is now being sought.   The <u>Torres</u> Consent Judgment specifically states that "No checks payable on a District 6 Plans account will be signed by a Union officer or employee. *No Union officer or employee will be paid with Plans funds*."   (<u>Torres</u> Consent Judgment, ¶ 9) (emphasis added).   The following provision of the <u>Chao</u> Final Consent Judgment also bars the requested salary reimbursement:

> 15.  Defendants Perry and the Union *are enjoined from sharing employees* or otherwise commingling employee services to be performed by the (1) District 6 Health Plan and District Pension Plan ("District 6 Plans") and (2) the Union.  The areas of the office utilized by (1) the District 6 Plans and (2) the Union will be segregated, so that the administration of the District 6 Plans by employees of the Plans will be carried out in an area distinct from that of the Union.  This provision applies to any subsequent ERISA-covered health plan(s) or pension plan(s) either or both Defendants may establish, or any health or pension plan(s) covered ERISA.

---

[10]  Because the parties are concerned only with the issue of salary reimbursements for the 2006 time period, the Court does not address the issue of whether the prior payments were valid, or whether they were prohibited transactions to a party-in-interest under ERISA requiring possible disgorgement by the Union.

(IF Mot. to Void, Ex. E at 5-6) (emphasis added).  Because both Torres and Crespo are Union employees,  paragraph  nine (9) of the <u>Torres</u> Consent Judgment bars any reimbursement by the Plans to the Union for their salaries for the subject time period.  Furthermore, provision fifteen (15) of the <u>Chao</u> Final Consent Judgment bars Torres and Crespo from having any involvement with the Plans because they are both Union employees.  The Union cannot argue (and it does not) to the contrary, because: (1) where the Union asserts that the Plans owe the Union for eighty percent of Torres's salary, and ninety percent of Crespo's, the remaining percentages are obviously paid by the Union and, hence, both are still employed by the Union; (2) because both are included on the Union's Form LM-2 Labor Organization Annual Report as employees, the presumption must lie that they are employees of the Union; and (3) there is no evidence that there exist any employment agreements between Torres, Crespo and the Plans that would indicate that they are employees of the Plans.

The Union, through its president William Perry, was a signatory to both of the Consent Judgments and it is therefore bound by them.  Regardless of whether any initial agreement for the Plans to reimburse the Union for the salaries was valid, once the Union agreed to the <u>Torres</u> and <u>Chao</u> Consent Judgments, any previous agreement for reimbursement became null and void and relieved the Plans from being required to reimburse the Union for the salaries of the Union's employees for at least the time period in question.  The Union cannot argue that it was unaware of the effects of the Consent Judgments as it was a party through its designated representatives to the negotiations that led to the eventual agreements.  Therefore, the Union's Application for reimbursement of Torres's and Crespo's salaries for the 2006 time period must be rejected.

**2. Retroactive Rent**

**A.** *Prohibited Transactions and Exemptions Under ERISA*

The remaining issue concerns the Union's Application for retroactive rent for the Plans' occupancy and use of building premises. The IF argues that the Union's demand for retroactive rent should be voided because the basis of any alleged lease agreement would be considered a prohibited transaction under ERISA or, in the alternative, the Union's claim is barred because it is a compulsory counterclaim that was required to be pled prior to the various 2006 Consent Judgments. (IF Mot. to Void at 9, 16).

Congress enacted ERISA to effectuate the goals of uniformly regulating and safeguarding the assets of employee benefit plans. Chao v. Malkani, 452 F.3d 290, 291 (4th Cir. 2006); Larue v. Dewolff, 450 F.3d 570, 572 (4th Cir. 2006); *see also* 29 U.S.C. § 1001 *et seq*. ERISA has a complex and detailed statutory framework that sets forth the standards governing the conduct of fiduciaries who have discretionary authority over such benefit plans, and the statutory scheme includes rules barring a fiduciary from engaging in certain types of transactions. *See* Malkani, 452 F.3d at 293-94 (outlining various prohibitions). Among the proscriptions is the prohibition that a fiduciary cannot engage in transactions involving interested parties, 29 U.S.C. § 1106(a)(1), and a fiduciary is likewise prohibited from engaging in any self-dealing, id. § 1106(b). Section 1106(a)(1) details those transactions which are prohibited between a plan and a party in interest, providing, in pertinent part:

> (a) Transactions between a plan and a party in interest. Except as provided in section 1108 of this [29 U.S.C.] title:
>
> (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that

13

such transaction constitutes a direct or indirect--

(A)    sale  or exchange, or leasing, of any property between the plan and a party in interest;

(B)    lending  of money or other extension of credit between the plan and a party in  interest;

(C)    furnishing of goods, services, or facilities between the plan and a party in interest;

(D)    transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan

. . . .

29 U.S.C. § 1106(a)(1)(A)-(D).  A "party-in-interest" is defined comprehensively in 29 U.S.C. § 1002(14).  In the present case, as discussed *supra*, the Union must be considered as a party-in-interest because § 1002(14)(D) provides that an employee organization that has any members covered by such plans as the subject Health and Pension Plans is considered to be a party-in-interest. 29 U.S.C. § 1002(14)(D).  With regard to self-dealing, §1106(b) provides in relevant part that:

(b)   Transactions between plan and fiduciary.  A fiduciary with respect to a plan shall not--

(1)    deal with the assets of the plan in his own interest or for his own account,

(2)    in his individual  or  in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or

(3)    receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

29 U.S.C. § 1106(b). Generally, violations of § 1106 are *per se* violations; however, § 1108 provides

14

certain exemptions from the prohibitions enumerated in § 1106. Section 1108(a) permits the Secretary to grant exemptions to fiduciaries, while § 1108(b)[11] enumerates a list of exempted transactions. *See* 29 U.S.C. § 1108. A fiduciary who engages in a prohibited transaction that lacks an accompanying exemption under § 1108 has breached his fiduciary duty and is required to compensate the plan for any resulting loss, and a court may impose "other equitable or remedial relief as [it] may deem appropriate." *See* 29 U.S.C. § 1109; Malkani, 452 F.3d at 294. Additionally, 29 U.S.C. 1132(a)(2) provides for civil actions for "appropriate relief under section 1109," while § 1132(a)(3) authorizes suits against non-fiduciaries who participate in ERISA violations such as those transactions prohibited by § 1106(a)(1). Harris Trust & Sav. Bank v. Salomon Smith Barney, 530 U.S. 238, 241 (2000); Mertens v. Hewitt Associates, 508 U.S. 248, 252 (1993). Sections 1132(a)(2) and (3) provide in part that:

> (a) . . . a civil action may be brought--
>
> . . .
>
> (2)     by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
>
> (3)     by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan;
>
> . . . .

29 U.S.C. § 1132(a)(2) and (3). Although ERISA does not specify what is considered "appropriate

---

[11] The specific exemption that is relevant to the subject issue is § 1108(b)(2) which was promulgated in 29 C.F.R. §2550.408b-2, and is titled: "General statutory exemption for services or office space."

equitable relief," the courts have identified several types of potential remedies that are available as equitable relief, including restitution, injunctive relief, and mandamus. *See* Mertens, 508 U.S. at 256 ("'equitable relief' can also refer to those categories of relief that were *typically* available in equity...such as injunction, mandamus, and restitution, but not compensatory damages") (emphasis in original).

The Union asserts that the Plans agreed to pay a share of the Union's rent and expenses based upon the Plans' proportionate use of the Union's premises. (Union Applic. ¶¶ 3-4.) The Union seeks retroactive rent for the period between March 2003 and June 2006, after which time the Plans "relocated" to the premises of Alicare, a third-party administrator that took over the administration of the Plans as a result of the Chao Consent Judgment. In response to the IF's Motion to Void, the Union argues that its claim for rent reimbursement is not preempted by ERISA because the matter is exempted from the prohibited transactions set forth in § 1106(a). (Union Mem. at 11-13.) Prior to March 2003, the building where Union offices were located was owned partly by the Health Plan (eighty-percent) and by the Union (twenty percent). Pursuant to the 2001 Consent Order, the building was then sold to a third party in the March 2003 time frame, after which time the Union became a tenant to the new landlord and was required to pay full rent, the Plans having liquidated their interest in the building in the sale. The Union claims that the Plans agreed to pay rent and other expenses to the Union based upon an Expense Sharing Agreement which the Union acknowledges was never fully executed by the Plans. (Union Application ¶ 3.) Nevertheless, the Union maintains that even without a valid written agreement, recovery of its claim is proper based upon either New York Real Property Law § 220 and/or the New York common law theory of *quantum meruit*. (Union Mem. at 4-6.)

The IF contends in response that regardless of whether there was a binding agreement, New York law does not apply because the Union's claim would necessarily be based on a transaction/agreement that constitutes a prohibited transaction under 29 U.S.C. § 1106 and is therefore preempted by ERISA. (IF Mot. to Void at 16.) The Union contends that its claim is not preempted because under Mackey v. Lanier Collection Agency & Service, Inc., 486 U.S. 825 (1988), and Albert Einstein Med. Ctr. v. Nat'l Benefit Fund for Hosp. & Health Care Employees, 740 F. Supp. 343 (E.D. Pa. 1989), its claim should be considered as a "run-of-the-mill state-law claim" that is not addressed by ERISA because the retroactive rent claim is one for an independent right to payment, separate and distinct from the terms of either Plan. *See* Mackey, 486 U.S. at 833 (noting that many "lawsuits against ERISA plans for run-of-the-mill state-law claims such as unpaid rent" are not preempted even though these suits "obviously affect[] and involve ERISA plans and their trustees."); *see id.* (holding that ERISA did not bar state-law garnishment action against ERISA employee welfare benefit plan). Stated another way, the Union's argument is that *any* claim for rent and related expenses would not be preempted by ERISA. The Union offers, as an alternative argument, that even if its claim falls under the rubric of a "prohibited transaction," the claim is nonetheless exempted by § 1108 and 29 C.F.R. 2550.408b-2, and is thus subject to applicable New York property law.

The Union's reliance on Mackey and Einstein is misplaced, as neither case is applicable to the facts or issues here. While it is correct that "run-of-the-mill" contract claims for unpaid rent are not automatically preempted by ERISA if a third-party landlord that was not a party-in-interest or fiduciary was involved, Mackey and Einstein did not address the issue of whether the underlying

17

transaction would be prohibited by ERISA.[12]  Although the Supreme Court in <u>Mackey</u> did note that suits against ERISA plans concerning actions by plans such as a failure to pay rent or creditors are not generally preempted by ERISA under 29 U.S.C. § 1144(a),[13] the central issue in <u>Mackey</u> was whether a state law that specifically singles out ERISA benefit plans for different treatment than non-ERISA benefit plans is preempted under ERISA.  <u>Mackey</u>, 486 U.S. at 825-26, 833.[14]  The Court held only that such state laws are indeed preempted by ERISA unless expressly prohibited in the ERISA statute.  <u>Id.</u> at 843.

The Union is correct in its reference to <u>Einstein</u> in that a claim that is based on a right that is independent to the terms of a plan is not preempted by ERISA.  (Union Mem. at 7.).  <u>Einstein</u>, 740 F. Supp. at 347.  However, <u>Einstein</u> did not involve analysis of the underlying transactions from which the claims arose.  The issue in <u>Einstein</u> was what precise contractual right supported the subject claims and not the nature of the parties, *e.g.*, a party-in-interest issue, who were involved in the formation of the underlying contract.  In the Union's claim here, it is the presence of an opposing party (the Union) in the underlying transaction who is a party-in-interest (and arguably a fiduciary as well) that implicates ERISA preemption and therefore requires the analysis that was not addressed

---

[12] By "transaction," the Court is referring to any alleged agreement between the Union and the Plans' fiduciaries, *i.e.* the Administrator and/or trustees, to bind the Plans for payment (transferring assets) to the Union for rent, expenses, *etc*.

[13] Section 1144(a) provides, in part, that ERISA's provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003 (a) of this title and not exempt under section 1003 (b) of this title."  29 U.S.C. § 1144(a).  This preemption provision is to be construed broadly.  <u>Pilot Life Ins. Co. v. Dedeaux</u>, 481 U.S. 41, 48 (1987); <u>Singh v. Prudential Health Care Plan, Inc.</u>, 335 F.3d 278, 283-84 (4th Cir. 2003).

[14] The case dealt with a Georgia statute that specifically exempted ERISA welfare benefit plans from the state's general garnishment procedures statute.  <u>Id.</u> at 825-26.

in either <u>Mackey</u> or <u>Einstein</u>.

Congress intended to preempt state law claims that are based on prohibited transactions. *See*, *e.g.*, <u>Harris Trust v. Salomon Bros.</u>, 1997 U.S. Dist. LEXIS 15365, at *9 (N.D. Ill. Sept. 30, 1997) (concluding that "ERISA's goals and its legislative history evidence Congress' manifest intent to preempt state...law insofar as it applies to parties in interest who have engaged in transactions prohibited by ERISA § 1106."). Although a general claim for rent and related expenses could constitute a "run-of-the-mill state-law" contract claim and, therefore, avoid ERISA preemption, the facts in this case involve a transaction(s) that place the Union's claim beyond the realm of the "run-of-the-mill" arrangement and within the purview of ERISA preemption.

There can be no dispute that the Union was and is a party-in-interest as defined by ERISA and that any transaction/agreement between the Union and the Plans that furnished office space to the Plans and/or obligated the Plans to pay for rent, expenses, *etc.*, would be considered a prohibited transaction under §§ 1106(a)(1)(C) (prohibiting the "furnishing of goods, services, or facilities between the plan and a party in interest") and (D) (prohibiting the "transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan") *unless* such a transaction is exempted by 29 U.S.C. § 1108. And, although Section 1108(b)(2) exempts payments made by a plan to a party-in-interest, including a fiduciary, for office space or any service (or a combination of services), the accompanying Regulation provides that these transactions are exempted *only* if:

> (1) Such office space or service is necessary for the establishment or operation of the plan; (2) such office space or service is furnished under a contract or arrangement which is reasonable; and (3) no more than reasonable compensation is paid for such office space or service.

29 C.F.R. § 2550.408b-2(a). The Union argues that it meets all such criteria. Obviously, the Plans

required office space to conduct their operations.  However, there is no contract or evidence of a definitive arrangement that would satisfy the second factor as specified in the statute or accompanying Regulation.  Clearly, a threshold issue is whether any contract or arrangement was approved by the Plans' fiduciaries as required.  However, the Union has failed to produce any evidence of such approval.  Rather, the only evidence the Union has presented is a May 2005 analysis by Callaghan Nawrocki LLP ("Callaghan Analysis"), which the Union refers to as an audit, even though it is specifically stated in the letter that accompanies the analysis that it is not an audit, but merely a management representation of the space allocation in the building for the Union and the Plans.  (Union Mem. at 9, Ex. F).  As such, the Callaghan Analysis fails to support the Union's contention that there was a definitive arrangement between the Plans and the Union concerning the payment of rent during the time frame of March 2003 to May 2005.  Nor has the Union identified anything else in the voluminous record in the case that would indicate such an agreement existed that was properly approved by the Plans' fiduciaries.  Furthermore, the Union has not even provided any substantiation of any discussion among the Plans' fiduciaries regarding any proposal concerning a subleasing arrangement with the Plans.  Although the Union asserts that it did not agree to provide the Plans office space for free, and the Plans do not contend otherwise, the lack of affirmative evidence of any arrangement to pay rent precludes the claim from being considered as an exempt transaction under Section 1108(b)(2).[15]

---

[15] The Union also argues that because Mr. Wolf, the former Independent Fiduciary, supposedly ordered the Callaghan Analysis to be conducted, such a circumstance demonstrates that he knew the Plans owed the Union compensation for rent.  (Union Mem. at 9.)  However, aside from whether such a circumstance would be dispositive, Mr. Wolf denies ordering the analysis and Callaghan cannot recall who did so in any event.  (IF Mot. to Void at 7-9.)  The Union seeks additional discovery on the issue generally.  (Union Mem. at 15.)  However, any further discovery would be unlikely to result in the production of anything useful, or be otherwise justified, especially

In addition to the argument that the Union's claim for retroactive rent is based on a prohibited transaction under § 1106(a)(1), the IF also asserts that the claim is a prohibited transaction as defined by § 1106(b)(2), which prohibits a fiduciary from engaging in a self-dealing transaction. *See* 29 U.S.C. § 1106(b)(2); *see also* <u>Reich v. Compton</u>, 57 F.3d 270, 287-88 (3d Cir. 1995) (holding that a violation of § 1106(b)(2) occurs when trustees of an ERISA benefit plan are involved in the decision making process on behalf of the plan in a transaction affecting the benefit plan and the trustees also represent an adverse party to the plan in the same transaction); <u>Cutaiar v. Ray</u>, 590 F.2d 523, 530 (3d Cir. 1979) (finding that fiduciaries of an ERISA plan who act on both sides of a transaction cannot negotiate the best terms for the plan and, therefore, such a transaction is prohibited by § 1106(b)(2)).  Although the fiduciaries of a plan and parties with adverse interests may enter into a transaction, they may only do so if the fiduciary is recused from exercising any authority, control, or responsibility in the decision-making process concerning the transaction. *See* 29 C.F.R. § 2550.408b-2(e)(1).[16]

---

when the expense to the Plans and the further dissipation of Plan assets in responding to such efforts is considered.  If documentation existed detailing any arrangement between the Union and the Plans, the Union would have had possession of at least copies of such documentation over time. Additionally, two of the Union's officers, Torres and Frances Winn, were directly involved with the Plans as Administrator and a trustee, respectively, and, as such, they would have access to or knowledge of such evidence while being presumably available as a ready source of information throughout the process.

[16] 29 C.F.R. 2550.408b-2(e)(1) provides:

(e) Transactions with fiduciaries --

(1) In general.  If the furnishing of office space or a service involves an act described in section 406(b) [1106(b)] of the Act (relating to acts involving conflicts of interest by fiduciaries), such an act constitutes a separate transaction which is not exempt under section 408(b)(2) [1108(b)(2)] of the Act.  The prohibitions of section 406(b) supplement the other prohibitions

Here, there is no evidence that the Union officers, who were also fiduciaries for the Plans and who would have necessarily been involved in any decision to approve or commit the Plans to subleasing office space from the Union, were recused and did *not* assert any authority, control, or responsibility during the consideration of any proposal so as to satisfy the exemption.  (IF Mot. to Void at 17-18.)  The Union argues that its claim for retroactive rent is not a "self-dealing prohibited transaction" under § 1106(b)(2) because: (1) the current and prior independent fiduciaries were responsible for the manner in which the Plans were being administered during the time for which the Union seeks to be reimbursed for rent and expenses; and (2) the Union's claim otherwise satisfies the exemption under 29 C.F.R. § 2550.408b-2(e)(3).[17]  (Union Mem. at 11-12).

_____

of section 406(a) [1106(a)] of the Act by imposing on parties in interest who are fiduciaries a duty of undivided loyalty to the plans for which they act.  These prohibitions are imposed upon fiduciaries to deter them from exercising the authority, control, or responsibility which makes such persons fiduciaries when they have interests which may conflict with the interests of the plans for which they act.  In such cases, the fiduciaries have interests in transactions which may affect the exercise of their best judgment as fiduciaries.  Thus, a fiduciary may not use the authority, control, or responsibility which makes such person a fiduciary to cause a plan to pay an additional fee to such fiduciary (or to a person in which such fiduciary has an interest which may affect the exercise of such fiduciary's best judgment as a fiduciary) to provide a service.  Nor may a fiduciary use such authority, control, or responsibility to cause a plan to enter into a transaction involving plan assets whereby such fiduciary (or a person in which such fiduciary has an interest which may affect the exercise of such fiduciary's best judgment as a fiduciary) will receive consideration from a third party in connection with such transaction.  A person in which a fiduciary has an interest which may affect the exercise of such fiduciary's best judgment as a fiduciary includes, for example, a person who is a party in interest by reason of a relationship to such fiduciary described in section 3(14)(E), (F), (G), (H), or (I).

[17] § 2550.408b-2(e)(3) provides in relevant part that:

(3) Services without compensation.  If a fiduciary provides services to a

22

As to the Union's first argument, the fact that an independent fiduciary was responsible for insuring compliance with the various consent decrees does not determine whether the Union engaged in a prohibited self-dealing transaction.  Arguably, the Union, prior to the <u>Chao</u> and <u>Torres</u> Consent Judgments, was a fiduciary of the Plans because two Union officers were also fiduciaries of the Plans,[18] but whether the Union was a fiduciary of the Plans or not is inconsequential because a non-fiduciary can also be held liable for participating in a fiduciary's breach.  *See* 29 U.S.C. § 1132(a)(3). Moreover, the Plaintiffs' primary complaints in <u>Torres</u> involved fiduciary breaches by others for their handling of the Plans assets, and not the Independent Fiduciary.

As to whether the Union's claim is exempted under § 2550.408b-2(e)(3), the Union argues that a claim for rent for office space is, in reality, a direct expense and therefore exempt pursuant to the section.  (Union Mem. at 11).  However, § 2550.408b-2(e)(3) is concerned with the providing of "services" and not the "furnishing of office space."  Section 2550.408b-2(e)(1) specifically instructs that the furnishing of office space and the providing of services are distinct types of transactions where each is identified separately as opposed to § 2550.408b-2(e)(3) that is specifically titled "Service without compensation," meaning that the section does not apply to office space which

<div style="margin-left:2em">

plan without the receipt of compensation or other consideration (other than reimbursement of direct expenses properly and actually incurred in the performance of such services within the meaning of § 2550.408c-2(b)(3)), the provision of such services does not, in and of itself, constitute an act described in section 406(b) [1106(b)] of the Act.  The allowance of a deduction to an employer under section 162 or 212 of the Code for the expense incurred in furnishing office space or services to a plan established or maintained by such employer does not constitute compensation or other consideration.

</div>

[18] Frances Winn was the trustee of the Plans until September 7, 2004, when he was removed as trustee pursuant to ¶ 23 of the 2004 <u>Chao</u> Consent Judgment.  Nephty Cruz replaced Winn as the Union's Trustee on the Board of the Plans.

is provided for in a transaction that violates § 1106(b)(2).[19]

The Union further argues that it is not acting in any fiduciary capacity in seeking reimbursement for the retroactive rent because it will not be a part of the decision-making process in resolving the issue.  (Union Mem. at 12.)  Nevertheless, the argument must fail if, for no other reason, than a non-fiduciary can still be held liable for participating in a fiduciary's breach of duty Harris Trust & Sav. Bank, 530 U.S. at 241, which in this case involved fiduciaries that necessarily approved or controlled the decision making process in the approval of a transaction, *e.g.*, an alleged subleasing agreement, involving an adverse party (the Union) that some of the fiduciaries also represent.  Therefore, where the Union's claim triggers § 1106(b)(2), the claim is preempted by ERISA because any leasing agreement would have constituted a prohibited transaction that was not otherwise exempted.

## B.  *The Claim for Retroactive Rent Should Have Been Raised as a Compulsory Counterclaim*

Finally, the Union's claim for retroactive rent is precluded in any event because it should have been raised as a compulsory counterclaim during the litigation before the entry of the Consent Judgments, pursuant to Federal Rule of Civil Procedure 13(a).  That Rule provides, in pertinent part, that "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it *arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction*."  Fed. R. Civ. P. 13(a) (emphasis added).  The Union argues that its claim for retroactive rent does not implicate the

_____

[19] Even though the last sentence of § 2550.408b-2(e)(3) refers to office space, the reference only relates to plans established or maintained by an employer and specific deductions allowable under the tax Code – not anything that applies to the issue at hand.

standard for compulsory counterclaims because the claim was not part of the same transaction or occurrence that the Plaintiff's claims were based on in either <u>Wilson v. Torres</u> or <u>Chao v. Perry</u>, and/or its claim for retroactive rent has no relationship with any alleged malfeasance or breach of fiduciary duty under ERISA as was the subject of any of the litigation.  (Union Mem. at 7, 11-13.) Such a position takes too narrow a view of what constitutes "transaction or occurrence" as addressed by controlling precedent.  The courts discourage literal interpretation of Rule 13(a); instead, "transaction or occurrence" must be given a more liberal meaning to facilitate the general purpose of  FCRP 13(a) – to avoid the burden of multiple trials and the relitigation of additional issues premised on the same factual bases.  <u>Painter v. Harvey</u>, 863 F.2d 329, 331 (4th Cir. 1988).

Whether a claim must be asserted as a compulsory counterclaim involves the following considerations: (1) are the issues of fact and law raised in the claim and counterclaim largely the same?; (2) would <i>res judicata</i> bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule?; (3) will substantially the same evidence support or refute the claim as well as the counterclaim?; and (4) is there any logical relationship between the claim and counterclaim?  <u>Id.</u> (citation omitted).  However, a court need not answer all these questions in the affirmative for the counterclaim to be compulsory.  <u>Id.</u> (citation omitted).  Indeed, these inquiries work "less [like] a litmus" test and "more [like] a guideline."  <u>Id.</u>  The "underlying thread" to each inquiry is "evidentiary similarity," and "where...the same evidence will support or refute both the claim and counterclaim, the counterclaim will almost always be compulsory."  <u>Id.</u> at 331-32.  Even if the evidence supporting opposing positions is different, a compulsory counterclaim may still arise from the same "transaction or occurrence" if it is a logically related claim, especially when factoring in considerations of economy and fairness.  <u>Id.</u> at 332-34.

25

The Union's claim for retroactive rent is based on the Union's assertion of an alleged subleasing arrangement between it and the Plans dating back to March 2003.   Any such arrangement/agreement/contract triggers analysis under ERISA's prohibited transactions provisions because of the status of the Union as being either a party-in-interest and/or a fiduciary.   In both the Chao and Torres cases, the primary complaints were for breach of ERISA fiduciary duties against the Union, the Union's employees and officers, and the Administrator and a trustee of the Plans who were Union  employees and officers.  (Torres Am. Compl. ¶¶ 48-49, 51-53, 64, 66-68.)  The Plaintiffs claimed that the fiduciary breaches involved various transactions that resulted in the improper transfer of  monies/assets from the Plans to the Union.  Id.  The Union's claim for retroactive rent is predicated upon a transaction between it and the Plans that, even if the Union's claim met one of the exemptions, adjudication of the claim would depend on evidence that involved the alleged breaches of duties by the Plans' fiduciaries.  The claims in Torres necessarily involved evidence that focused on alleged fiduciary breaches by the same fiduciaries involved in the Union's present claim.  Accordingly, where the Torres claims involved fiduciary breaches in the time period of 2001 until June 2005, the Court concludes that the Union's claim necessarily involves issues of fact and law that were similar, if not the same, as those asserted in the Plans' claims in Torres.[20]

There is a logical relationship between the Plans' claims involving fiduciary breaches  and the Union's claim for retroactive rent where the former arises from alleged ERISA fiduciary breaches by Torres, Frances Winn, and the Union itself.  Clearly, if the Torres case had proceeded to trial, then

---

[20] Moreover, as stated supra, one of the primary complaints in Torres was that the Plans' fiduciaries transferred monies to the Union without proper documentation.  Arguably, any claim by the Union for retroactive rent would, in Torres, have been met with a claim by the Plans that such transfers of monies to the Union would, at the very least, be offset (satisfied) by any claim for rent.

the issues of whether the Defendants breached their fiduciary duties under ERISA would have been fully litigated and, alternatively, all issues associated with alleged fiduciary breaches, including the Union's present claim, would have been resolved and the claim would have necessarily been a subject of the negotiation and settlement in either or <u>Chao</u> and <u>Torres</u>, or both.  In addition, the determination by a jury of whether the Union was liable, either as a non-fiduciary or fiduciary, for any breach of fiduciary duties under ERISA in its own dealings with the Plans, such as those involving subleasing agreements/arrangements, would certainly have a preclusive effect on any subsequent claims by the Union that involve possible prohibited transactions between it and the Plans during the same time period as the <u>Torres</u> case.  Thus, absent the compulsory claim rule, principles of *res judicata* would likely bar the Union's claim for retroactive rent in any subsequent action because such claims would entail relitigating the same facts on the issue of prohibited transactions involving fiduciary breaches.

Because there is both evidentiary similarity and a logical relationship between the Union's claim and those asserted in <u>Torres</u>, any claim by the Union at this stage for reimbursement of expenses or monies allegedly owed by the Plans to the Union involving possible prohibited transactions with the Plans' fiduciaries was required to be pursued in the active phase of the litigation pursuant to Rule 13(a).  If the Union were to be permitted to assert its retroactive rent claim at this stage, the purposes of Rule 13(a) would be subverted because it would necessitate relitigating the same set of factual issues of whether the claim is a prohibited transaction involving fiduciary breaches, and it would prejudice the Plans by dissipation of its assets to defend against the claim. Therefore, because the Union failed to pursue the claim prior to the entry of the <u>Torres</u> Consent Judgment, it is barred and rendered void.

## CONCLUSION

The Union asserts, in essence, that it made proposals to the Plans for some sort of subleasing agreement and that the Plans rejected the proposals without the Union doing anything more.  The Union did not initiate in a timely fashion any proceedings such as eviction to enforce what it now claims to be its rightful interests.  Nor did the Union inform the DOL, the Court in the Southern District of New York, this Court, or the Plaintiffs of any claim for retroactive rent prior to 2006.  It is a fair inference that nothing about retroactive rent claims was raised in any of the many settlement discussions that led to the Chao Final Consent Judgment or the Torres Consent Judgment.  Obviously, any claim the Union had against the Plans, either by way of set-off or other mechanism, would have been an essential factor in the terms of the settlement negotiations in both matters.  Now, after the finalization of the Consent Judgments in both cases, the Union seeks approval of a claim that the Union has failed to pursue for approximately three years.  The Court cannot condone such dilatory action, especially in view of the prolonged nature of the litigation and its complexity.

Accordingly, based on the foregoing analysis, the Independent Fiduciary's Motion to Void the Union's Application for Retroactive Rent and Salary Reimbursement is GRANTED, and the Application by District 6, IUISTHE to Recover Unpaid Retroactive Rent and Other Expenses from the District 6 Health Plan and the District 6 Pension Plans is DENIED.

An appropriate Order shall issue.

_____/s/_____
Dennis W. Dohnal
United States Magistrate Judge

Date: 1/8/07
Richmond, Virginia